UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KINGSBURY CAPITAL, INC., WILLIAM D. VELLON, ASHER D. WOLMARK, and KINGSBURY CAPITAL, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> DENISE KAPPEL, <br><br> Defendant. | No. 20 C 800 <br><br> Judge Sara L. Ellis |

## OPINION AND ORDER

On May 17, 2017, Defendant Denise Kappel instituted an arbitration proceeding against Plaintiffs Kingsbury Capital, Inc., William D. Vellon, Asher D. Wolmark, and Kingsbury Capital, LLC (the "Kingsbury Parties"), alleging that the Kingsbury Parties had not properly compensated Kappel for certain sales of securities. An arbitration panel rendered a final award in favor of Kappel, prompting the Kingsbury Parties to file this action in state court to vacate the award pursuant to § 12 of the Illinois Uniform Arbitration Act ("UAA"), 710 Ill. Comp. Stat. 5/12. Kappel removed the case to this Court under the Court's diversity jurisdiction and filed a competing motion to confirm the award. The Kingsbury Parties contend that the arbitration panel showed partiality toward Kappel, exceeded its authority, rendered an award in the absence of an arbitration agreement, and violated public policy. The Court rejects all of the Kingsbury Parties' arguments and finds that they received a fair hearing. The Court therefore denies the Kingsbury Parties' petition to vacate the arbitration award and grants Kappel's motion to confirm the arbitration award.

## BACKGROUND

Kingsbury Capital, LLC ("Kingsbury LLC") was established in 2007 and registered as a Federal Industry Regulatory Authority ("FINRA") securities broker and dealer until May 22, 2015. Kingsbury LLC was dissolved on January 8, 2016. Vellon and Wolmark owned Kingsbury LLC and were registered with FINRA as representatives of Kingsbury LLC. Kappel was registered with FINRA as a representative of Kingsbury LLC from January 2012 to December 2014. Kappel's Registered Representative Agreement ("RR Agreement") with Kingsbury LLC included a Schedule A, which outlined her compensation. Kappel and the Kingsbury Parties dispute whether Schedule A required Kappel to be compensated seventy percent of all business conducted through Kingsbury LLC or only seventy percent of commissions earned in Kappel's capacity as a registered representative.

In 2012, Kappel sought to sell a private placement known as Organovo to her clients in Ohio. The State of Ohio requires dealers to register with the Division of Securities of the Ohio Department of Commerce. Ohio Rev. Code Ann. § 1707.06 (West 1982). Kingsbury LLC, Vellon, and Wolmark were not registered dealers in Ohio. In order to complete the sale, Kappel became dually registered through an oral agreement with Spencer Trask Ventures, Inc. ("Trask"), a FINRA broker and dealer registered in Ohio, in January 2012. Additionally, as part of the arrangement, Kingsbury LLC entered into a written contract with Trask, in which Trask agreed to compensate Kingsbury LLC with eight percent of the cash value and warrants on all Organovo shares placed through Kappel's sale. Kappel sold $1,585,000 of Organovo shares to her Ohio clients, and Trask compensated Kappel $55,745 in cash and 55,745 in Organovo warrants. Kingsbury LLC received $126,800 and 126,800 warrants for the sale.

Kappel ceased registration with Trask and Kingsbury LLC in December 2014. On February 17, 2015, Kingsbury LLC conducted a FINRA approved asset sale to Edwin C. Blitz Investment ("Blitz"). Vellon and Wolmark then obtained ownership of Blitz and changed the name to Kingsbury Capital, Inc. ("Kingsbury Inc.").

On May 17, 2017, Kappel filed FINRA Arbitration No. 17-01139 against the Kingsbury Parties and Trask. Kappel initiated the arbitration to recover commissions she claimed the Kingsbury Parties and Trask still owed her from the Organovo sale, bringing claims for breach of contract, unjust enrichment, fraud, conversion, and negligence. Kappel argued that Kingsbury LLC was required to compensate Kappel in full after Trask paid Kingsbury LLC its percentage for the Organovo sale. In the alternative, Kappel argued that Kingsbury LLC assigned her RR Agreement to Trask, and, therefore, Trask compensated her approximately $30,000 less than required by the RR Agreement. The Kingsbury Parties claimed that Schedule A only required Kappel to be compensated for her commissions as a registered representative. In other words, the Kingsbury Parties argued that they did not have to compensate Kappel because she was not acting in her capacity as a registered representative for Kingsbury LLC when she made the Organovo sales through Trask.

Thomas P. Valenti, Ray J. Grzebielski, and Courtney Paige Delaney served as arbitrators for Kappel's case, with Valenti serving as the presiding chairperson. Kingsbury Inc. filed a motion to dismiss, claiming that no arbitration agreement existed between Kingsbury Inc. and Kappel; Kappel was never registered with Kingsbury Inc., and, therefore, FINRA rules did not require Kingsbury Inc. to arbitrate the claim; and Kingsbury Inc. did not exist at the time of the Organovo sales. The arbitration panel denied the motion to dismiss. After Kingsbury Inc. filed the motion to dismiss but before it was decided, Kingsbury Inc. signed a submission agreement,

3

agreeing to submit to arbitration of Kappel's claims in accordance with FINRA's rules and procedures and to "abide by and perform any award(s) rendered pursuant to [the] Submission Agreement." Doc. 4-4 at 1. Although Kingsbury LLC did not execute a submission agreement, the arbitration panel found that because it fully participated in the arbitration hearing, and FINRA's Code of Arbitration Procedure required it to submit to arbitration, it was bound by the panel's decision.

Before the case reached an evidentiary hearing, Kappel settled her claims with Trask for $30,000. The arbitration panel then presided over an evidentiary hearing on October 16, 17, and 18, 2019. On November 12, 2019, over Grzebielski's dissent, the arbitration panel rendered its final award in favor of Kappel and against the Kingsbury Parties, holding them jointly and severally liable for $130,000 in compensatory damages.

## ANALYSIS

In their petition, the Kingsbury Parties seek to vacate the FINRA arbitration award under § 12 of the UAA. 710 Ill. Comp. Stat. 5/12. Kappel, on the other hand, asks that the Court confirm the arbitration award, citing both § 11 of the UAA and § 9 of the Federal Arbitration Act ("FAA"). 710 Ill. Comp. Stat. 5/11; 9 U.S.C. § 9. Given that the analysis under the two acts is essentially the same and that the Kingsbury Parties' initial petition is framed around the UAA, the Court proceeds to analyze whether to confirm or vacate the arbitration award under the UAA while at the same time looking to cases interpreting the FAA for guidance. *See Gillispie v. Vill. of Franklin Park*, 405 F. Supp. 2d 904, 909 (N.D. Ill. 2005) ("The language of the FAA and the Illinois Uniform Arbitration Act is essentially the same."); *see also J & K Cement Constr., Inc. v. Montalbano Builders, Inc.*, 119 Ill. App. 3d 663, 668 (1983) ("[C]ourts interpreting state

4

arbitration statutes patterned after the Uniform Arbitration Act look for guidance to federal court decisions interpreting similar provision of the Federal Arbitration Act.").

In order to reflect the intent of finality in the UAA, judicial review of an arbitration award is "extremely limited." *Am. Fed'n of State, Cty. and Mun. Emps., AFL-CIO v. Dep't of Cent. Mgmt. Servs.* ("*AFSCME*"), 173 Ill. 2d 299, 304 (1996). Under the UAA, the Court must confirm the arbitration award unless a statutory exception set forth in § 12 of the UAA applies. 710 Ill. Comp. Stat. 5/11–12. Section 12 of the UAA provides that the Court may vacate an award on five grounds: (1) corruption or fraud, (2) arbitrator partiality, (3) the arbitrators exceeding their powers, (4) the arbitrators substantially prejudicing the rights of a party, and (4) the absence of an arbitration agreement. 710 Ill. Comp. Stat. 5/12. The Court may also vacate an award that contravenes public policy, *Colmar, Ltd. v. Fremantlemedia N. Am., Inc.*, 344 Ill. App. 3d 977, 993 (2003), or presents a gross error of law or fact that is apparent on the face of the award, *Rauh v. Rockford Prods. Corp.*, 143 Ill. 2d 377, 393 (1991). The Kingsbury Parties have the burden of proving that the arbitration award was improper by clear and convincing evidence. *In re Marriage of Haleas*, 2017 IL App (2d) 160799, ¶ 20.

The Kingsbury Parties argue that the Court should vacate the arbitration award because (1) arbitrator Valenti displayed partiality toward Kappel, (2) the arbitrators exceeded the scope of their powers, (3) no arbitration agreement existed between Kingsbury Inc. and Kappel, and (4) the award violates public policy. The Court addresses these arguments in turn.

## I. Alleged Partiality of Arbitrator Valenti

First, the Kingsbury Parties argue that the Court should vacate the award because Valenti, the presiding arbitrator, improperly demonstrated partiality toward Kappel. *See* 710 Ill. Comp. Stat. 5/12(a)(2) (the court shall vacate an award where "[t]here was evident partiality by an

arbitrator appointed as a neutral"). To vacate an award based on partiality, the Kingsbury Parties must show the arbitrator had a "direct, definite and demonstrable" interest in the outcome of the arbitration. *Edward Elec. Co. v. Automation, Inc.*, 229 Ill. App. 3d 89, 101–02 (1992). The evidence of partiality may not be "remote, uncertain or speculative." *Id.*

The Kingsbury Parties allege that arbitrator Valenti displayed evident partiality during the evidentiary hearings by yelling at, ridiculing, and otherwise demeaning the Kingsbury Parties' counsel. The Kingsbury Parties also allege that Valenti acted as an advocate for Kappel and entered the award against the Kingsbury Parties because of his partiality toward Kappel. But despite having the burden to prove partiality by clear and convincing evidence, *In re Marriage of Haleas*, 2017 IL App (2d) 160799, ¶ 20, the Kingsbury Parties do not cite to any evidence of Valenti's interest in the outcome of the arbitration, relying instead only on the allegations made in their petition to vacate. Such speculation does not suffice. *See Vega Asset Recovery, LLC v. Newedge USA, LLC*, No. 17 C 1332, 2019 WL 2409602, at *6 (N.D. Ill. June 7, 2019) (denying motion to vacate an arbitration award for partiality under the FAA because "Vega has presented no evidence of direct and definite bias so as to prove 'evident partiality'"); *Edward Elec.*, 229 Ill. App. 3d at 101 (noting that a party may not rely on speculative evidence of partiality to vacate arbitration award). Nor have the Kingsbury Parties demonstrated that the arbitrators had a financial or personal relationship with Kappel so as to call into question their neutrality. *See Edward Elec. Co.*, 229 Ill. App. 3d at 102. And "an adverse ruling alone is not 'direct, definite, and demonstrable bias' sufficient to constitute 'evident partiality.'" *Hurn v. Macy's, Inc.*, 728 F. App'x 598, 599 (7th Cir. 2018) (citations omitted) (denying motion to vacate an arbitration award under the FAA); *see also Edward Elec. Co.*, 229 Ill. App. 3d at 101–02 (in denying motion to vacate an arbitration award for partiality under the UAA, noting that "[w]e are all too

prone, perhaps, to impute either weakness of intellect or corrupt motives to those who differ with us in opinion" (alteration in original) (quoting *White Star Mining Co. v. Hultberg*, 220 Ill. 578, 603 (1906))). Without any evidence suggesting that Valenti had a definite, direct, or demonstrable interest in the outcome of the proceedings, the Court does not find Valenti's alleged partiality a valid ground for vacating the arbitration award.

## II. Arbitrators Allegedly Exceeding their Powers

Next, the Kingsbury Parties argue that the arbitrators exceeded their powers. *See* 710 Ill. Comp. Stat. 5/12(a)(3). The party seeking relief under § 12(a)(3) bears a heavy burden because the Court presumes that the arbitration panel did not exceed its authority. *Edward Elec. Co.*, 229 Ill. App. 3d at 103. An arbitration panel exceeds its powers when it decides matters that were not submitted to arbitration, *Cty. of Tazewell v. Ill. Fraternal Order of Police Labor Council*, 2015 IL App (3d) 140369, ¶ 13, or when its award contains gross errors of law or mistakes of fact on its face, *Rauh*, 143 Ill. 2d at 393. "It is not enough for petitioners to show that the panel committed an error—or even a serious error." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010); *see also Rauh*, 143 Ill. 2d at 391 (under the UAA, "an arbitrator's award will not be set aside for errors in judgment or mistakes of law or fact"). Instead, the Court only considers whether the arbitration panel interpreted the parties' contract, not whether the panel correctly interpreted the contract. *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) ("[T]he sole question for us is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong."); *AFSCME*, 173 Ill. 2d at 305.

The Kingsbury Parties first contend that the arbitration panel exceeded its powers because it issued an award against Kingsbury Inc., "an entity with whom [Kappel] had no contact whatsoever and was not even in existence at the time of the Organovo sale." Doc. 1-2

7

¶ 56. Because this argument overlaps with the Kingsbury Parties' argument that no arbitration agreement existed between Kingsbury Inc. and Kappel, the Court considers these arguments together below.

Additionally, the Kingsbury Parties allege that the award exceeded the powers of the arbitration panel because it imposed on them an illegal contract to compensate Kappel for sales of securities in a state in which they were not registered. The Kingsbury Parties claim that the arbitration panel failed to interpret Kappel's RR Agreement with Kingsbury LLC because it ignored a provision in that agreement that states that Kappel "will solicit business in only those states where both the Firm and [Kappel] are registered and licensed." Doc. 24 at 10. Because Kappel only made sales in Ohio, the Kingsbury Parties claim that the panel must have ignored this provision in rendering its award in Kappel's favor.

But the Kingsbury Parties' argument does not have merit. The record shows that Kingsbury LLC contracted with Trask to receive compensation for Kappel's sales of Organovo in Ohio. Given the parties' arrangements allowing Kappel to sell securities in Ohio, the arbitration panel could interpret Kingsbury LLC's contracts with Trask and Kappel to allow Kingsbury LLC to receive sales and warrants from the sale of Organovo in Ohio and to further require the Kingsbury Parties to compensate Kappel for that sale. The Court cannot find that the arbitrators committed gross errors of law or gross mistakes of fact on the face of the award and so will not vacate the award simply because the Kingsbury Parties disagree with the panel's interpretation of the RR Agreement. *See Rauh*, 143 Ill. 2d at 393 (holding that even if the arbitrator misinterpreted the contract provisions, the award must not be vacated unless gross errors of law or mistakes of fact exist on the face of the award). Therefore, because the

Kingsbury Parties have not demonstrated that the arbitration panel exceeded its authority, the Court will not vacate the arbitration award on these grounds.

### III. Alleged Absence of Arbitration Agreement

Relatedly, the Kingsbury Parties argue that the Court should vacate the award because no arbitration agreement existed between Kingsbury Inc. and Kappel. *See* 710 Ill. Comp. Stat. 5/12(a)(5). Kingsbury Inc. raised this argument with the arbitration panel through a motion to dismiss, which the arbitration panel denied. Shortly after filing the motion to dismiss but before the arbitration panel denied the motion, however, Kingsbury Inc. signed a submission agreement, indicating that it agreed to arbitrate the dispute with Kappel and "to abide by and perform any award(s) rendered." Doc. 4-4 at 1. Because Kingsbury Inc. signed the submission agreement and fully participated in the hearings, the Kingsbury Parties cannot now object to the arbitration award by claiming no agreement existed in an attempt to avoid the result. *See Traderight Secs., Inc. v. Kirschman*, No. 10 C 2042, 2011 WL 614090, at *3 (N.D. Ill. Feb. 15, 2011) ("The parties did agree to arbitration. . . . [The party claiming it did not submit] explicitly agreed to arbitrate those claims by executing [uniform submission agreements]."); *Mayo v. Dean Witter Reynolds, Inc.*, 258 F. Supp. 2d 1097, 1105 (N.D. Cal. Apr. 22, 2003) ("An executed [submission agreement] is a valid, binding agreement."). The language in the submission agreement, which Kingsbury Inc. signed despite its then-pending motion to dismiss and which does not include any language reserving Kingsbury Inc.'s right to contest the arbitration panel's jurisdiction, is "clear and unequivocal" evidence that Kingsbury Inc. submitted to arbitration of Kappel's claims and agreed to be bound by the award. *Traderight Secs.*, 2011 WL 614090, at *4–5 ("[I]f Plaintiffs wished to contest arbitrability . . . Plaintiffs should not have signed the clearlyworded [submission agreements] without first contesting arbitrability."); *Smith v. Bartolini*, No. 01 C

4311, 2003 WL 21148940, at *8 (N.D. Ill. May 14, 2003) (concluding that a party agreed to arbitrate where he executed a submission agreement without reserving any rights to contest jurisdiction). Therefore, the Court finds that Kingsbury Inc. agreed to arbitrate Kappel's claims and that the arbitration panel was within its power to issue an award against all of the Kingsbury Parties.

## IV.  Alleged Violation of Public Policy

Finally, the Kingsbury Parties raise an argument that the arbitration award violates public policy because it aims to enforce an illegal contract. The public policy exception is narrow and warrants vacation of an award only if "the contract, as *interpreted* by the arbitrator," violates an "explicit public policy." *AFSCME*, 173 Ill. 2d at 307. The public policy must be "well-defined" and "dominant" and derived from legislation and caselaw rather than assumed public interests. *Colmar, Ltd.*, 344 Ill. App. 3d at 1030. In determining if a public policy exists, Illinois courts look first to the State's constitution and statutes and then to judicial precedent. *J & K Cement Constr., Inc.*, 119 Ill. App. 3d at 683. The Court must determine whether a well-defined and dominant public policy can be identified, and, if so, then the Court must determine whether the award violates that public policy. *Colmar, Ltd.*, 344 Ill. App. 3d at 1030.

The Kingsbury Parties correctly state that enforcement of an illegal contract is against public policy. *See Vine St. Clinic v. HealthLink, Inc.*, 222 Ill. 2d 276, 296 (2006); *Gamboa v. Alvarado*, 407 Ill. App. 3d 70, 75 (2011) ("Courts will not enforce an illegal contract, a contract that expressly contravenes either Illinois or Federal law and thus violates public policy."). But the Kingsbury Parties have failed to demonstrate how the award in this case requires the enforcement of an illegal contract. When interpreted together, the contracts between Kappel, the Kingsbury Parties, and Trask indicate that the parties sought to comply with Ohio regulations

concerning the sale of securities in that state. Kingsbury LLC recognized that Ohio law required registration in the state to sell securities there and contracted with Trask to legally complete the sale and receive compensation. The Kingsbury Parties fail to explain how the arbitration panel's interpretation of Kappel's RR Agreement requiring the Kingsbury Parties to more fully compensate Kappel for the Organovo sales violates this requirement or involves the enforcement of an illegal contract. *See United States v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009) ("Perfunctory and undeveloped arguments as well as arguments unsupported by pertinent authority are waived."). Because the Kingsbury Parties have the burden to make this demonstration by clear and convincing evidence, a burden they have not carried, the Court will not disturb the award on this ground. And because the Court has not found a valid reason to vacate the arbitration award, the Court denies the Kingsbury Parties' petition to vacate and grants Kappel's motion to confirm the award.

## CONCLUSION

For the foregoing reasons, the Court denies the Kingsbury Parties' petition to vacate the arbitration award, grants Kappel's motion to confirm the arbitration award [4], and terminates this case.

Dated: September 14, 2020

SARA L. ELLIS
United States District Judge